IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kenneth E. Logan, Jr., #51352-083, | ) C. A. No. 2:09-1828-JFA-RSC |
| Petitioner, | ) |
| -versus- | ) **REPORT AND RECOMMENDATION** |
| Warden Darlene Drew, | ) |
| Respondent. | ) |

This habeas corpus petition brought pursuant to 28 U.S.C. §2241 by a federal prisoner proceeding pro se and in forma pauperis is before the undersigned United States Magistrate Judge for a report and recommendation on the respondent's motion for summary judgment filed on November 3, 2009. 28 U.S.C. § 636(b).

**PROCEDURAL BACKGROUND**

The petitioner, Kenneth E. Logan, Jr., is currently incarcerated at the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey. He was incarcerated at FCI Bennettsville, South Carolina from April 13, 2005, to July 9, 2009. He is serving a 262-month term of incarceration imposed by the United States District Court for the Eastern District of Virginia for Conspiracy to Possess with Intent to Distribute and to Distribute a Controlled Substance, Crack and Cocaine (21 U.S.C. § 846); Possession with Intent to Distribute a Controlled Substance, Cocaine (21 U.S.C. § 841(A)(1)); and Possession with

1

Intent to Distribute a Controlled Substance, Crack (18 U.S.C. § 2). (See Def. Ex. 2, Sentence Monitoring Computation Data). He has a projected release date of September 28, 2014, with credit for Good Conduct Time.

On July 10, 2009, Petitioner brought this action against Darlene Drew, the warden at FCI Bennettsville, and sought to have his conviction in an administrative disciplinary action for Threatening Another with Bodily Harm expunged and the forfeited 27 days of Good Conduct Time imposed as punishment restored to him. He alleged that his due process rights were violated because the Discipline Hearing Officer (DHO) was not an impartial factfinder and thus abused his discretion, the DHO deliberately withheld exculpatory evidence, the DHO's report was based on fabricated facts, erroneous fact finding, insufficient evidence, and that the investigation began one year prior to the incident for which he was convicted. He claims that he is actually innocent of the charge.

The petitioner was provided a copy of the motion and exhibits and on November 5, 2009, he was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). The petitioner filed a response in opposition to the motion with his affidavit on November 16, 2009,

and again on March 5, 2010. Hence, it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is

not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

## APPLICABLE LAW

The plaintiff's claims of due process violations are controlled by Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), concerning the due process rights of federal prisoners during disciplinary proceedings. In Wolff, the Supreme Court held that a prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. Id. The Court held that, even so, this does not entitle prisoners to the full panoply of rights afforded a defendant in a criminal prosecution when these credits are forfeited pursuant to a prison disciplinary proceeding. Id. at 556-57.

The Wolff court set out the following five procedural safeguards which are required in a prison disciplinary

4

proceeding: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges 24 hours in advance of the disciplinary hearing; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative if charged inmate is illiterate or if complex issues are involved; and (5) a written decision by the fact-finder as to the evidence relied upon and the rationale behind the disciplinary tribunal's conclusion. Wolff, 418 U.S. at 563-66. The due process requirements of Wolff, as they relate to federal prisoners, have been codified at 28 C.F.R. § 541.10 et seq. See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the DHO); 28 C.F.R. § 541.17 (Procedures before the DHO).

In addition, the Court has held that a finding of "some evidence" in the record to support the decision of a DHO is sufficient to satisfy the requirements of due process. Superintendent Mass. Corr'l Inst. v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The determination of whether the standard is satisfied merely requires inquiry into "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. Further, the Court noted that "[a]scertaining whether [the] standard is

satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." Id. at 455-56.

**FACTS**

Logan set forth the facts underlying his claims of denial of due process in his sworn petition as follows:

> "On October 16, 2006 Petitioner at approximately 9:15PM was escorted and placed in Special Housing Unit (SHU) by Lt. Tanner.
>
> While in the SHU, on October 17, 2006 at 8:30AM purportedly Lt. R. Hankerson served Petitioner with an Incident Report No. 1524352; charging him with violation of inmate disciplinary code 203: "Threatening Another With Bodily Harm". Where correctional Officer A. Leviner made the following allegations in the report: 'On Monday, October 16, 2006, at approximately 8:45PM, inmate Logan, K. #51352-083, came up to the office door and asked me to turn the television. I stated to him that he will have to wait a minute. Inmate Logan stated, 'you let that clock hit 9:00PM, and I will get your ass.'[1]
>
> However, Lt. L. Miller interviewed Petitioner that same morning in connection with the Incident Report, Petitioner was advised of his rights and provided with a copy of the report. According to Lt. L. Miller's report; the investigation began on Sepotember 27, 2005 at 8:30AM, and that Petitioner stated: "I asked the officer about three times... when she gets chance to turn the T.V., the officer stated that she was busy and did not have chance to turn the T.V., I then told the officer I was going to cook some food. I then approached the

---

[1] By affidavit the petitioner indicated that what he said to Leviner was, "Don't leave us ass out as before," rather than, "you let that clock hit 9:00PM, and I will get your ass." Petitioner also affied that he "was insolent once she addressed me in an unprofessional manner... ." Aff. in opposition, para. 2.

6

officer again and asked her to turn the T.V., she then got upset and called the Lt. (Tanner). The Lt. and the officer had me in the sally port and the officer told the Lt. that I threatened her. I asked the officer in front of the Lt. 'So you are going to do me like this'? She did not reply. The Lt. then placed me in the SHU." The report was forwarded to the Unit Disciplinary Committee (UDC) for further review.

On October 18, 2006 at 8:00PM, Petitioner waived the right to participate in the UDC hearing, but requested Staff Representation, further investigation and Witnesses. Incidently the UDC team recommended 27 days of Dsiciplinary Segregation, forfeiture of 10 days Good Conduct Time (GCT) and referred the charge to the DHO for a hearing.

On October 31, 2006, the initial DHO hearing was adjourned pending the production of Staff Representation, evidence and Witnesses.

On November 7, 2006 at 1:35PM over Petitioner's objections; the DHO found Petitioner guilty of the charged offense. As support for the DHO findings, Ms. Comstock, pointed to the written Incident Report prepared by Officer A. Leviner, Petitioner's Witness statements and two 'Witness' Solicitation letters...as demonstrating propensity to commit the prohibited act. Disregarding the UDC's recommendation, the DHO (J. Comstock), sanctioned Petitioner to a forfeiture of 27 days GCT, 90 days loss of commissary and telephone privileges.

On November 31, 2006, the DHO completed her report which stated in Section 'C' Documentary Evidence: [i]n addition to the Incident Report and Investigation, the DHO gave weight to the finding of guilt in connection to the Petitoner's (2) Solicitation letters addressed to Inmate(s) Dale Eaton and Mike Anderson.

On December 13, 2006, DHO submitted a Second Report omitting the allegations in Section 'C' of the initial DHO report.

7

> Subsequently, Petitioner began his timely filed administrative remedies, arguing (1) that he was not afforded a Fair and Impartial Hearing, (2) that the Investigation of his alleged conduct began one year prior to the Incident occuring, is prejudicial and unconstitutional, (3) the DHO report erroneously listed [Lt. Hankerson] as the investigating officer who served Petitioner, was inaccurate giving rise to the fact finders' credibility, and (4) Intentionally and knowingly giving weight to fraudulant evidence, i.e, Two-letters to potential witnesses, as another attempt to fabricate Petitioner's propensity in the offense against him." (sic).

Supporting memorandum for writ of habeas corpus under 28 U.S.C. § 2241, pgs. 2-3.

It is undisputed that Petitioner was given a copy of the incident report on October 17, 2006, and thereafter an investigation was conducted. After the matter had been referred to the Unit Discipline Committee, it conducted a hearing on October 18, 2006. Petitioner declined to appear at the hearing and refused to sign a Waiver of Appearance. (See Def. Exhibit #4, Part II, § 21, Exhibit #5, Waiver of Appearance, and Exhibit #6, Duties of Staff Representative). Due to the nature of the charges, the matter was referred to the DHO. Petitioner was advised of his rights before the DHO. (Def. Exhibit #7, Notice of Inmate Discipline Hearing Before the DHO and Exhibit #8, Inmate Rights at Discipline Hearing). Petitioner indicated that he wanted to call witnesses and have a staff representative. The DHO hearing was held on November 7, 2006, at which time Petitioner was present and made a statement to the DHO in his own defense.

(Def. Exhibit #9, § III B). Additionally, three witnesses testified on Petitioner's behalf. Id. The DHO also considered two letters from inmates Dale Eaton and Mike Anderson. Id., § III. C.

The DHO found Petitioner guilty as charged. On November 13, 2006, the DHO prepared a written report explaining his decision, the evidence he relied upon, and the reasons for the sanctions he imposed. Id., §§ V and VII. Petitioner was provided a copy of the report on November 14, 2006. Id. § IX. On December 13, 2006, the DHO issued an Amended DHO report correcting the name of the Lieutenant who gave Petitioner a copy of the incident report. The original report was also amended to indicate that the DHO did not rely upon any documentation, i.e., letters from inmates Dale Eaton and Mike Anderson, outside the Incident Report and Investigation in making his decision. (Def. Exhibit #10, § III (C) and Exhibit #11). A copy of the Amended DHO report was given to Petitioner on December 14, 2006. (Def. Exhibit #10, § IX).

Petitioner appealed the DHO's decision to the Southeast Regional Director, who upheld the disciplinary actions and sanctions. (See Def. Exhibit #3, pgs. 1-5). In his appeal Petitioner pointed out that the investigation date on the incident report in Part 11, No. 22 shows that this matter was investigated a year before he got an incident report: the date he noted as wrong is September 27, 2005. (Exhibit #3, pgs.

9

4-5). The Regional Director acknowledged that the date in this particular section was an oversight by staff, but noted the correct date of October 17, 2006, was set forth in the investigation portion of the incident. Id.

Likewise, Petitioner appealed this decision to the Central Office, where the disciplinary action and sanctions were also upheld. Id., pgs. 6-9.

**DISCUSSION**

A review of the record and relevant case law indicates that the respondent's motion for summary judgment should be granted.

Here, Petitioner believes that the DHO and Officer Leviner conspired to find him guilty of fabricated accusations but has nothing but conjecture to support his belief. The record before the court establishes that the petitioner's due process rights were not violated. Petitioner was given a copy of the amended incident report and notice of the hearing before the DHO approximately two weeks before it was held. The petitioner was allowed to present evidence and witnesses, was represented by a staff representative, and made a statement in his own defense to the DHO. Petitioner was provided a written decision by the fact-finder as to the evidence relied upon and the rationale behind the conclusion. Based on the record, it appears that the petitioner was afforded all the process he was due in his disciplinary hearing. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct.

2963, 41 L.Ed.2d 935 (1974).

As for whether there was any evidence to support the DHO's determination that the petitioner had violated Code 203, the court does not have the authority to weigh evidence or to judge the strength of any particular defense the petitioner may present. Instead, the court is asked only to determine if the DHO had some evidence upon which to base his finding that the petitioner violated code 203. Superintendent Mass. Corr'l Inst. v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Here, the DHO detailed the evidence he relied upon, including the reporting officer's written statement about the incident and Petitioner's statement to the unit officer when she told him he would have to wait for her to change the television station. The DHO reasoned that Petitioner's statement demonstrated his propensity to commit the prohibited act as he swore at the officer and asked if she was going to do the same to him as last time. Id. This evidence is sufficient to uphold the decision and to grant judgment as a matter of law to the respondent.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the Respondent's motion for summary judgment be granted and the Petitioner's claims against the BOP be dismissed.

Respectfully Submitted,

*Robert S. Carr*
Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
~~March~~ April 5, 2010

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within **fourteen (14) days** of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).